# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**CASTADELL RUFFIN**                              **CIVIL ACTION**

**VERSUS**                                        **NO.  13-481**

**N. BURL CAIN**                                  **SECTION "H"(2)**

## REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases.  Upon review of the entire record, I have determined that a federal evidentiary hearing is unnecessary.  See 28 U.S.C. § 2254(e)(2).[1]  For the following reasons, I recommend that the instant petition for habeas corpus relief be **DISMISSED WITH PREJUDICE** as time-barred.

---

[1]Under 28 U.S.C. § 2254(e)(2), whether to hold an evidentiary hearing is a statutorily mandated determination.  Section 2254(e)(2) authorizes the district court to hold an evidentiary hearing only when the petitioner has shown either that the claim relies on a new, retroactive rule of constitutional law that was previously unavailable, 28 U.S.C. § 2254(e)(2)(A)(i), or the claim relies on a factual basis that could not have been previously discovered by exercise of due diligence, 28 U.S.C. § 2254(e)(2)(A)(ii); and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner. 28 U.S.C. § 2254(e)(2)(B).

I.    FACTUAL AND PROCEDURAL BACKGROUND

The petitioner, Castadell Ruffin,[2] is incarcerated in the Louisiana State Penitentiary in Angola, Louisiana.[3]   On October 17, 2000, Ruffin was charged in Jefferson Parish by bill of information with distribution of cocaine within 1,000 feet of an elementary school.[4]   The Louisiana Fifth Circuit Court of Appeal summarized the facts of the case as determined at trial as follows:

> Megan Carter (the pseudonym of an undercover officer), testified that she was employed by the Jefferson Parish Sheriff's Office, and that she conducted an investigation into illegal drug trafficking on Manson Street in Metairie in Jefferson Parish.  On August 21, 2000, Officer Carter met a white female in the Auto Zone parking lot at the corner of Airline Drive and Manson Street.  They had a conversation regarding the purchase of "two twenties" of crack cocaine. The female told Officer Carter to meet her in the La Village Hotel parking lot. The female left but returned with a black male, later identified as Ruffin.  After the female told Ruffin what Officer Carter wanted, Ruffin gave Officer Carter cocaine.  Officer Carter gave Ruffin forty dollars, and she gave the female two dollars.
>
> Officer Carter testified that the location of the drug transaction was approximately one block away from St. Christopher's School and Church. Officer Carter had video and audio equipment in her vehicle to monitor the transaction.  She identified State's Exhibit 1 as a videotape of the transaction, which videotape was played for the judge.  Still photographs taken from that videotape were also identified and admitted into evidence.  Officer Carter testified that Ruffin's eye was disfigured.  She further identified State's Exhibit 3 as the two rocks of crack cocaine she purchased from Ruffin, testifying that she did not know Ruffin's name when she purchased the drugs from him.  She gave a description of Ruffin to Officer Robert Gerdes the night of the purchase.  Officer

---

[2]I note that Ruffin misspelled his first name "Casadell" on the caption of the original petition, although it is indicated elsewhere as "Castadell." Rec. Doc. No. 1, p.1. The record also contains other spellings of his first name, including "Castadel."

[3]Rec. Doc. No. 1.

[4]St. Rec. Vol. 2 of 5, Bill of Information, 10/17/00.

Billy Matranga subsequently presented Officer Carter with a photographic lineup, State's Exhibit 4. Officer Matranga did not tell her whom to pick out in the lineup. Officer Carter recognized photograph number 3, Ruffin, as the man who sold drugs to her, and identified State's Exhibit 5 as a photograph of the area where the drug transaction occurred.

Officer Robert Gerdes, who was called as a witness by the state, testified that he became involved in a narcotics investigation in August of 2000. He testified that, on August 21, 2000, he spoke with Officer Carter, who informed him that she had made a crack cocaine purchase from a black male at the La Village Motel which was located at 100 Manson Avenue off of Airline Drive in Metairie. Officer Carter provided Officer Gerdes with a physical description of the individual: a black male, 5'9" or 5'10", medium build and that he appeared to be blind or scarred in the right eye. Based on that description, Officer Gerdes and some other officers proceeded to the La Village Motel in an attempt to find the individual who sold drugs to Officer Carter.

When they pulled into the motel parking lot, Officer Gerdes observed the black male that Officer Carter had described. Officer Gerdes and the other officers detained the black male, later identified as Ruffin, for identification purposes. Officer Gerdes completed a standard Jefferson Parish Sheriff's Office field interview card, marked as State's Exhibit 6. The card listed Ruffin's name, date of birth and physical description. On the back of the card, Officer Gerdes noted that Ruffin was blind in his right eye, and that he had a small tattoo of an "R" on his right hand. Officer Gerdes gave Officer Billy Matranga the field interview card and informed him that he and Sergeant Bruce Harrison had arrested Ruffin that night for an outstanding attachment.

Billy Matranga, who was called as a witness by the state, testified that he was employed by the Jefferson Parish Sheriff's Office in the narcotics division. Officer Matranga testified that he had received information regarding a suspect's description from Officer Gerdes. Based on this description, Officer Matranga compiled a photographic lineup using a photograph of Ruffin on August 23, 2000. He identified State's Exhibit 4 as the photographic lineup he compiled. Officer Matranga showed the lineup to Officer Carter on August 23, 2000, and she was able to positively identify Ruffin, photograph number 3, as the individual who sold her drugs. Officer Matranga testified he did not offer her anything to pick Ruffin, nor did he suggest to her in any way that she should pick him. Officer Matranga was on the scene during the drug transaction, and although he did not witness it, he heard it on a transmitter.

The state and Ruffin agreed to the following stipulation: that if the state called Charles Kron, a forensic scientist, he would be accepted as an expert in the field of forensic chemistry; that Mr. Kron received two pieces of off-white objects at the crime lab on August 23, 2000 in connection with this case; that he analyzed the two objects; and that the two objects were found to contain cocaine.

Sergeant Joe Williams, who was called as a witness by the state, testified that he took measurements in connection with this case, and that the distance between the property line of St. Christopher's School and the property line of the La Village Motel was 98.3 feet.  He identified State's Exhibit 5 as a photograph of the area where he took the measurements.  Sergeant Williams explained that he positioned police cars to assist him in taking the measurements. Agent Fleming's car was next to the property line of St. Christopher's School, and his car was next to the property line of the La Village Motel. Sergeant Williams testified that, in looking at State's Exhibit 5, it appeared to him that the distance from the place where the drug transaction occurred to his car was the same as the distance from his car to Agent Fleming's car. He did not measure the distance between the property line of St. Christopher's School and the actual location of the drug transaction.

Bert Carlisle, who was called as a witness by the state, testified that he was the assistant principal at St. Christopher's School. Using State's Exhibit 5, he identified the building which housed children in kindergarten through eighth grade, the church, and the pre-school for three and four-year-old children. Mr. Carlisle also identified a playground for the three and four-year-old children located next to Manson Street and across the street from the La Village Motel. He testified that the school was in operation on August 21, 2000, that St. Christopher was a drug free zone, and that there were signs posted around the school stating that St. Christopher was a drug free zone.

State v. Ruffin, 836 So.3d 625, 628-30 (La. App. 5th Cir. 2002); State Record Volume 3 of 5, Louisiana Fifth Circuit Court of Appeal Opinion, 02-KA-798, pages 3-6, December 30, 2002.

After waiving his right to a jury, Ruffin was tried before a judge on May 10, 2001, and was found guilty as charged.[5]  On May 30, 2001, the state trial court sentenced Ruffin to serve twenty (20) years in prison at hard labor.[6]  The State filed a multiple bill

---

[5]St. Rec. Vol. 2 of 5, Trial Minutes, 5/10/02; St. Rec. Vol. 3 of 5, Trial Transcript, 5/10/02.

[6]St. Rec. Vol. 2 of 5, Sentencing Minutes, 5/30/01; St. Rec. Vol. 3 of 5, Sentencing Transcript, p. 4, 5/30/01.

on June 5, 2001, charging Ruffin as a third felony offender.[7]  After hearings, the trial

court on March 19, 2002, found that Ruffin was a second felony offender and

resentenced him to serve sixty (60) years in prison at hard labor.[8]  Ruffin's counsel filed

a motion to reconsider the sentence as excessive, and the court set the matter for hearing

on April 16, 2002.[9]  No ruling was issued while the case proceeded to the appellate court.

On direct appeal to the Louisiana Fifth Circuit, Ruffin's appointed counsel

asserted as error that the maximum sentence of sixty (60) years imposed upon Ruffin was

excessive.[10]  Counsel also asked the appellate court to conduct a review for errors patent

on the record.  Acting pro se, Ruffin also asserted four additional grounds for review:[11]

(1) He did not knowingly and intelligently waive a jury trial. (2) The state trial court

erred in admitting identification evidence and physical evidence without ruling on the

defense motion to suppress. (3) He was denied effective assistance of counsel when

counsel failed timely to file a motion for post-verdict judgment of acquittal based on

insufficient evidence to support the verdict. (4) The state trial court erred when it failed

---

[7]St. Rec. Vol. 2 of 5, Multiple Bill, 6/5/01.

[8]St. Rec. Vol. 3 of 5, Multiple Bill Hearing Minutes, 3/19/02; Multiple Bill Hearing Minutes, 3/12/02; Response to Multiple Bill, dated 3/12/02; St. Rec. Vol. 2 of 5, Multiple Bill Hearing Transcript, pp. 9-10, 3/19/02; Multiple Bill Hearing Transcript, 3/12/02.

[9]St. Rec. Vol. 3 of 5, Motion to Reconsider Sentence, 4/8/02.

[10]St. Rec. Vol. 3 of 5, Appeal Brief, 02-KA-798, 8/26/02.

[11]St. Rec. Vol. 3 of 5, Pro Se Appeal Brief, 02-KA-798, 10/28/02.

to consider the sentencing guidelines and abused its discretion in imposing an excessive sentence and in erroneously stating that he had been originally sentenced to thirty (30) years instead of twenty (20) years before imposition of the multiple offender sentence.

The Louisiana Fifth Circuit affirmed Ruffin's conviction on December 30, 2002, finding no merit in Ruffin's substantive claims and noting that the remaining portion of his ineffective assistance of counsel claim arising from the stipulation to the crack cocaine testing would be better raised on post-conviction review.[12]

As for the sentencing issues, the court remanded the matter to the state trial court for ruling on Ruffin's pending motion to reconsider the multiple offender sentence and reserving Ruffin's right to relodge his appeal of the sentence within sixty (60) days of that ruling. In addition, on its review for errors patent, the court found that the state trial court had failed to advise Ruffin of his rights as a multiple offender under La. Rev. Stat. § 15:529.1 regarding the charges against him, the burden of proof, the right to be tried, and the right to remain silent. The appellate court held, however, that the error was harmless in light of the evidence supporting the multiple offender adjudication. The court also found error in the state trial court's failure to notify Ruffin regarding post-conviction delays and instructed the trial court on remand to notify Ruffin of the applicable delays.

---

[12]State v. Ruffin, 836 So.3d at 625; St. Rec. Vol. 3 of 5, 5th Cir. Opinion, 02-KA-798, 12/30/02.

The state trial court complied with the latter directive on January 23, 2003.[13]  In compliance with the appellate court's initial mandate,[14] the state trial court denied Ruffin's motion to reconsider on October 6, 2003, finding that the motion was (a) improper under La. Code Crim. P. art. 881, which prohibits modification of a hard labor sentence already being served; (b) improper under State ex rel. Melinie v. State, 665 So.2d 1172 (La. 1996), which requires that sentencing errors must be raised on direct appeal; and (c) repetitive of issues already addressed in the direct appeal.[15]

On November 4, 2003, Ruffin submitted a writ application to the Louisiana Fifth Circuit seeking review of the alleged excessiveness of his sentence.[16]  The appellate court denied the application on November 14, 2003, noting that the appeal had been resolved on December 30, 2002.[17]  The Louisiana Supreme Court denied Ruffin's subsequent writ

---

[13]St. Rec. Vol. 4 of 5, 5th Cir. Order, 03-KH-984, 9/4/03 (acknowledging that the state trial court provided notice of the post-conviction delays on January 23, 2003); 5th Cir. Writ Application, 03-KH-984, 8/18/03.

[14]St. Rec. Vol. 4 of 5, 5th Cir. Order, 03-KH-1099, 9/22/03; 5th Cir. Writ Application 03-KH-1099, 9/19/03; 5th Cir. Order, 03-KH-984, 9/4/03 (acknowledging that the state trial court provided notice of the post-conviction delays on January 23, 2003); 5th Cir. Writ Application, 03-KH-984, 8/18/03.

[15]St. Rec. Vol. 2 of 5, Trial Court Order, 10/6/03.

[16]St. Rec. Vol. 4 of 5, 5th Cir. Writ Application, 03-KH-1321, 11/12/03 (dated 11/4/03).

[17]St. Rec. Vol. 4 of 5, 5th Cir. Order, 03-KH-1321, 11/14/03.

application on December 10, 2004, citing La. Code Crim. P. art. 930.3 and State ex rel. Melinie.[18]

On January 14, 2005, Ruffin submitted a second motion to the state trial court seeking to correct his sentence on grounds that he did not knowingly waive his rights as a multiple offender under La. Rev. Stat. § 15:529.1 and that the sentence was excessive.[19] The trial court denied the motion as repetitive on January 25, 2005.[20] Ruffin did not seek review of this ruling.

Ruffin returned to the state trial court on July 25, 2005, with a third motion to correct his sentence on the following grounds:[21] (1) The state trial court failed to notify him of his rights under La. Rev. Stat. § 15:529.1. (2) The predicate conviction was not based on a knowing and voluntary plea of guilty. (3) The sentence was excessive. (4) His counsel provided ineffective assistance when he failed to present evidence regarding the court's failure to notify him of his rights and the illegality of the predicate conviction. The state trial court denied the motion as repetitive on August 8, 2005.[22] Ruffin did not seek review of this ruling.

---

[18]State ex rel. Ruffin v. State, 888 So.2d 831 (La. 2004); St. Rec. Vol. 5 of 5, La. S. Ct. Order, 2003-KH-3473, 12/10/04; La. S. Ct. Writ Application, 03-KH-3473, 12/18/03 (postal metered 12/2/03).

[19]St. Rec. Vol. 2 of 5, Motion to Correct a Constitutional Excessive Habitual Offender Sentence, 1/21/05 (dated 1/14/05).

[20]St. Rec. Vol. 2 of 5, Trial Court Order, 1/25/05.

[21]St. Rec. Vol. 2 of 5, Motion to Correct Illegal Sentence, 7/29/05 (dated 7/25/05).

[22]St. Rec. Vol. 2 of 5, Trial Court Order, 8/8/05.

Ruffin submitted a fourth motion to vacate his sentence to the state trial court on November 7, 2005, arguing that the state trial court enhanced his sentence on the erroneous statement that the original sentence was thirty (30) years in prison and that the enhancement was based on facts not found by a jury or admitted by him.[23] The state trial court construed the motion to be an application for post-conviction relief and denied it on December 1, 2005, as untimely filed more than two years after finality of his conviction.[24] Ruffin did not seek review of this ruling.

Three months later, on March 7, 2006, Ruffin filed a writ application in the Louisiana Fifth Circuit seeking review of his sentence based on several allegations of ineffective assistance of counsel.[25] The appellate court denied the application on March 14, 2006, indicating that Ruffin had failed to specify a trial court ruling for the court to review.[26]

Ruffin submitted another writ application to the Louisiana Fifth Circuit on April 4, 2006, seeking review of the trial court's December 1, 2005, ruling denying his motion

---

[23]St. Rec. Vol. 2 of 5, Motion to Vacate and Correct an Illegal Sentence, 11/29/05 (dated 11/7/05).

[24]St. Rec. Vol. 2 of 5, Trial Court Order, 12/1/05.

[25]St. Rec. Vol. 4 of 5, 5th Cir. Writ Application, 06-KH-147, 3/7/06 (not dated).

[26]St. Rec. Vol. 4 of 5, 5th Cir. Order, 06-KH-147, 3/14/06.

9

to correct the sentence as untimely.[27]   The Louisiana Fifth Circuit denied the writ application on April 17, 2006, finding no error in the ruling.[28]

The Louisiana Supreme Court denied Ruffin's subsequent writ application on February 16, 2007, as untimely, citing La. Code Crim. P. art. 930.8 and State ex rel. Glover v. State, 660 So.2d 1189 (La. 1995), and because it asserted claims not reviewable in post-conviction proceedings, citing La. Code Crim. P. art. 930.3 and State ex rel. Melinie.[29]

In the meantime, on December 8, 2006, Ruffin submitted a writ application to the Louisiana Fifth Circuit seeking an order directing the state trial court to rule on his motion seeking retroactive application of the amended sentencing provisions of La. Rev. Stat. § 15:308.[30]   Finding no such filing in the trial court record, the court denied the application on December 20, 2006.[31]

On January 19, 2007, Ruffin submitted to the state trial court a motion to reinstate his motion for retroactive application of the statutory sentencing provisions, along with

---

[27]St. Rec. Vol. 4 of 5, 5th Cir. Writ Application, 06-KH-264, 4/12/06 (dated 4/4/06).

[28]St. Rec. Vol. 4 of 5, 5th Cir. Order, 06-KH-264, 4/17/06.

[29]State ex rel. Ruffin v. State, 949 So.2d 410 (La. 2007); St. Rec. Vol. 5 of 5, La. S. Ct. Order, 2006-KH-1469, 2/16/07; La. S. Ct. Writ Application, 06-KH-1469, 6/12/06 (postal metered 5/1/06); St. Rec. Vol. 4 of 5, La. S. Ct. Letter, 2006-KH-1469, 6/12/06 (showing postal meter 5/1/06).

[30]St. Rec. Vol. 4 of 5, 5th Cir. Writ Application, 06-KH-956, 12/18/06 (dated 12/8/06).

[31]St. Rec. Vol. 4 of 5, 5th Cir. Order, 06-KH-956, 12/20/06.

a copy of the motion he alleged had been submitted on July 6, 2006.[32]  The state trial court denied the motions on February 8, 2007, finding no grounds for relief and referring Ruffin to the Louisiana Risk Review Panel.[33]

Shortly thereafter, on April 5, 2007, Ruffin submitted a motion to correct the sentence in the 1990 predicate case used in the multiple bill, which was denied by that court on May 3, 2007.[34]  Ruffin submitted a writ application to the Louisiana Fifth Circuit seeking review of that order under the 1990 case number.[35]

On July 24, 2007, the Louisiana Fifth Circuit construed the application to have been filed in connection with Ruffin's 2000 conviction and sentence and ordered the trial court to review his claim that the multiple offender sentence exceeded the maximum sentence and denied the remainder of the writ as untimely, citing La. Code Crim. P. art. 930.8.[36]  The state trial court denied Ruffin's motion as meritless on July 30, 2007.[37]

Ruffin returned to the state trial court on August 29, 2007, with a motion to review his sentence, asserting the court's authority to consider errors patent on the face of the

---

[32]St. Rec. Vol. 1 of 5, Motion to Reinstate, 1/30/07 (dated 1/19/07); Motion for Retroactive Application, 1/30/07 (bearing date of 7/7/06).

[33]St. Rec. Vol. 1 of 5, Trial Court Order, 2/8/07.

[34]St. Rec. Vol. 1 of 5, Trial Court Order (90-5609), 5/3/07; Motion to Correct Illegal Sentence (90-5609), 6/14/07 (dated 4/5/07).

[35]St. Rec. Vol. 4 of 5, 5th Cir. Writ Application, 07-KH-430, 6/18/07 (dated 6/11/07).

[36]St. Rec. Vol. 4 of 5, 5th Cir. Order, 07-KH-430, 7/24/07.

[37]St. Rec. Vol. 1 of 5, Trial Court Order, 7/30/07.

record under La. Code Crim. P. art. 920.[38]  The state trial court denied the motion as meritless on September 10, 2007.[39]

Ruffin submitted a writ application to the Louisiana Fifth Circuit on October 8, 2007, challenging the trial court's ruling.[40] By order issued November 8, 2007, the Louisiana Fifth Circuit denied relief, finding no error in the trial court's ruling.[41]  The court determined that the claims were repetitive of matters addressed on direct appeal and were not proper for post-conviction review under La. Code Crim. P. art. 930.3 and State ex rel. Melinie.

The Louisiana Supreme Court denied Ruffin's subsequent writ application on September 26, 2008, as untimely, citing La. Code Crim. P. art. 930.8 and State ex rel. Glover, 660 So.2d at 1189, and because the claims were not reviewable in post-conviction proceedings, citing La. Code Crim. P. art. 930.3 and State ex rel. Melinie, 665 So.2d at 1172.[42]

In the meantime, on June 24, 2008, Ruffin submitted another writ application to the Louisiana Supreme Court, seeking reconsideration of his prior pro se writ

---

[38]St. Rec. Vol. 1 of 5, Motion for Review, 9/4/07 (dated 8/29/07).

[39]St. Rec. Vol. 1 of 5, Trial Court Order, 9/10/07.

[40]St. Rec. Vol. 4 of 5, 5th Cir. Writ Application, 07-KH-837, 10/23/07 (dated 10/8/07).

[41]St. Rec. Vol. 4of 5, 5th Cir. Order, 07-KH-837, 11/8/07.

[42]State ex rel. Ruffin v. State, 992 So.2d 981 (La. 2008); St. Rec. Vol. 5 of 5, La. S. Ct. Order, 2008-KH-0029, 9/26/08; La. S. Ct. Writ Application, 08-KH-0029, 1/3/08 (dated 12/6/07); St. Rec. Vol. 4 of 5, La. S. Ct. Letter, 2008-KH-29, 1/3/08 (showing postal meter 12/7/07).

applications filed with the Louisiana Fifth Circuit under the holding in <u>State v. Cordero</u>, 993 So.2d 203 (La. 2008).[43] Per the <u>Cordero</u> procedures, this writ application was transferred to the Louisiana Fifth Circuit on October 10, 2008.[44] The matter was lodged by the Louisiana Fifth Circuit on October 18, 2008, under Case No. 08-WR-1124.[45]

A short time later, on November 19, 2008, Ruffin returned to the state trial court with another motion to vacate, set aside or correct his sentence, again on grounds that the trial court erred in reciting the original sentence as 30 years instead of 20 years when imposing the multiple offender sentence.[46] The state trial court denied the motion on December 3, 2008, referencing the numerous prior rulings finding his sentence to be appropriate.[47]

---

[43]St. Rec. Vol. 5 of 5, La. S. Ct. Writ Application, 08-KH-1732, 7/31/08 (dated 6/24/08). The <u>Cordero</u> court addressed alleged procedural improprieties and summary dismissal without judicial review of pro se post-conviction writ applications filed in the Louisiana Fifth Circuit during a given period of time.

[44]<u>State ex rel. Ruffin v. State</u>, 994 So.2d 5 (La. 2008); St. Rec. Vol. 5 of 5, La. S. Ct. Order, 2008-KH-1732, 10/10/08. The <u>Cordero</u> court directed that writs with questionable review history be transferred to the Louisiana Fifth Circuit for reconsideration.

[45]St. Rec. Vol. 4 of 5, 5th Cir. Writ Application, 08-WR-1124, 10/18/08.

[46]St. Rec. Vol. 1 of 5, Motion to Vacate, Set Aside and Correct Illegal Sentence, 11/25/08 (dated 11/19/08).

[47]St. Rec. Vol. 1 of 5, Trial Court Order, 12/3/08.

On January 2, 2009, Ruffin submitted a writ application to the Louisiana Fifth Circuit seeking review of the trial court's ruling.[48]  The court consolidated the application with the pending Cordero review under Case No. 08-WR-1124.

While these matters remained pending, on November 22, 2010, Ruffin submitted yet another motion to correct his sentence, in which he argued that the state trial court erred in sentencing him at hard labor under the multiple offender laws.[49]  The state trial court denied the motion on January 3, 2011 as meritless. Ruffin's subsequent writ application to the Louisiana Fifth Circuit, submitted March 2, 2011, was also consolidated with the Cordero review under Case No. 08-WR-1124.[50]

On September 15, 2011, the Louisiana Fifth Circuit denied relief under its Cordero review on reconsideration of Ruffin's prior pro se writ applications and found the claims urged in the companion 2009 and 2011 writ applications meritless.[51]  Ruffin thereafter submitted an application seeking review of that ruling in the Louisiana Supreme Court

---

[48]St. Rec. Vol. 4 of 5, 5th Cir. Writ Application, 09-KW-74, 1/23/09 (dated 1/2/09).

[49]St. Rec. Vol. 1 of 5, Motion to Correct an Illegal Sentence, 11/30/10 (dated 11/22/10).

[50]St. Rec. Vol. 4 of 5, 5th Cir. Writ Application, 11-KH-269, 3/15/11 (dated 3/2/11).

[51]St. Rec. Vol. 1 of 5, 5th Cir. Order, 08-WR-1124 c/w 09-WR-74 c/w 11-KH-269, 9/15/11.

on October 13, 2011.[52]  The Louisiana Supreme Court denied the application without stated reasons on June 22, 2012.[53]

## II.    FEDERAL HABEAS PETITION

On March 14, 2013, the clerk of this court filed Ruffin's petition for federal habeas corpus relief in which he asserts three (3) claims:[54] (1) The imposition of the sentence at hard labor was illegal under former La. Rev. Stat. § 15:529.1(G). (2) He was illegally sentenced when the state trial court incorrectly referenced the original sentence being enhanced. (3) The multiple offender sentence is illegal because the fact of the prior convictions was not submitted to a jury.

The State filed a response in opposition to Ruffin's petition, arguing that the petition was untimely filed.[55]  The State indicates that it "does not argue" that Ruffin's claims are unexhausted or defaulted, and in the alternative contends that Ruffin's claims fail to present cognizable federal claims and are without merit.

In his reply to the State's opposition, Ruffin argues that he is entitled to equitable tolling and that his claims have merit.[56]

---

[52]St. Rec. Vol. 5 of 5, La. S. Ct. Writ Application, 11-KH-2297, 10/18/11 (dated 10/13/11).

[53]State ex rel. Ruffin v. State, 90 So.3d 454 (La. 2012); St. Rec. Vol. 5 of 5, La. S. Ct. Order, 2011-KH-2297, 6/22/12.

[54]Rec. Doc. No. 1.

[55]Rec. Doc. No. 6.

[56]Rec. Doc. No. 7.

III.   GENERAL STANDARDS OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254.  The AEDPA went into effect on April 24, 1996[57] and applies to habeas petitions filed after that date.  Flanagan v. Johnson, 154 F.3d 196, 198 (5th Cir. 1998) (citing Lindh v. Murphy, 521 U.S. 320 (1997)).  The AEDPA therefore applies to Ruffin's petition, which, for reasons discussed below, is deemed filed in this court on February 20, 2013.[58]

The threshold questions in habeas review under the amended statute are whether the petition is timely and whether the claims raised by the petitioner were adjudicated on the merits in state court; i.e., the petitioner must have exhausted state court remedies and

---

[57]The AEDPA, which was signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments. Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law. United States v. Sherrod, 964 F.2d 1501, 1505 (5th Cir. 1992).

[58]The United States Court of Appeals for the Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se. Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. Coleman v. Johnson, 184 F.3d 398, 401 (5th Cir. 1999), cert. denied, 529 U.S. 1057 (2000); Spotville v. Cain, 149 F.3d 374, 378 (5th Cir. 1998); Cooper v. Brookshire, 70 F.3d 377, 379 (5th Cir. 1995).  Ruffin's petition was filed by the clerk of court on March 14, 2013, when the filing fee was received.  Ruffin's pleadings are marked received from him by the prison officials on February 20, 2013, when he delivered the pleadings for scanning and e-mailing to the court for filing.  Rec. Doc. No. 1, p. 7. The fact that he paid the filing fee does not alter the application of the federal mailbox rule to his pro se petition. See Cousin v. Lensing, 310 F.3d 843, 843 (5th Cir. 2002) (mailbox rule applies even if inmate has not paid the filing fee at the time of mailing) (citing Spotville, 149 F.3d at 374).

must not be in "procedural default" on a claim.  Nobles v. Johnson, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

As stated above, the State argues only that Ruffin's petition is not timely filed.  In his reply to the State's response, Ruffin alleges that he is entitled to equitable tolling in light of the issues addressed in Cordero, which he describes as a state impediment to his timely filing.[59]  Pretermitting consideration of the obvious procedural bars imposed by the state courts that would render Ruffin's claims procedurally defaulted from consideration by this court, and for the following reasons, I find that the record supports the State's conclusion that Ruffin's petition was not timely filed.

IV.   STATUTE OF LIMITATIONS

The AEDPA requires a petitioner to bring his Section 2254 petition in most cases within one year of the date his conviction became final.[60]  Duncan v. Walker, 533 U.S.

---

[59]Rec. Doc. No. 7.

[60]The statute of limitations provision of the AEDPA at 28 U.S.C. § 2244(d), provides for other triggers which do not apply here:
> (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of--
> A.      the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
> B.      the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State actions;
> C.      the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review;  or
> D.      the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
> (2) The time during which a properly filed application for State post-conviction or other

167, 179-80 (2001).  In this case, the Louisiana Fifth Circuit has declared that Ruffin's conviction and sentence became final under <u>state</u> law on December 10, 2004, when the Louisiana Supreme Court denied his first post-appeal writ application.[61]  For purposes of the AEDPA, however, Ruffin's conviction and sentence became final 90 days later, on March 11, 2005, when he did not file a writ application with the United States Supreme Court.  <u>Ott v. Johnson</u>, 192 F.3d 510, 513 (5th Cir. 1999) (period for filing for certiorari with the United States Supreme Court is considered in the finality determination under 28 U.S.C. § 2244(d)(1)(A)), <u>cert. denied</u>, 529 U.S. 1099 (2000); U.S. Sup. Ct. Rule 13(1).

Thus, under a literal application of the statute, Ruffin had one year from that date to file his federal habeas corpus petition.  In this case, as to that same time period, this court recognizes an eighty-six (86) day suspension period from September 1 through November 25, 2005, during which Hurricane Katrina impacted the running of limitations periods.  <u>See</u> <u>Hooker v. Cooper</u>, No. 10-1624, 2011 WL 335606, at *1 (E.D. La. Jan. 31, 2011) (Lemmon, J.) (citing <u>Mark v. Michael</u>, No. 08-1261, 2008 WL 4365929, at *2 (E.D. La. Sep. 23, 2008) (Engelhardt, J.) (Order adopting Report and Recommendation));

---

collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

[61]St. Rec. Vol. 1 of 5, 5th Cir. Order and Opinion, 08-WR-1124 c/w 09-WR-74 c/w 11-KH-269, 9/15/11, at p. 4.

Bartley v. La. Dep't of Corr., No. 06-2441, 2009 WL 2872932, at *3 (E.D. La. Sep. 2, 2009) (Feldman, J.) (Order adopting Report and Recommendation).

Thus, Ruffin would have had from finality of his conviction on March 10, 2004 to June 5, 2006, within which to file his federal habeas petition. He did not meet that deadline. His petition must be dismissed as untimely, therefore, unless the one-year statute of limitations period was interrupted or otherwise tolled in either of the following two ways recognized in the applicable law.

First, the United States Supreme Court has held that the one-year statute of limitations period in Section 2244(d)(1) of the AEDPA may be equitably tolled only when the petitioner has pursued his rights diligently and rare or extraordinary circumstances exist which prevented timely filing. Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005); Fisher v. Johnson, 174 F.3d 710, 713 (5th Cir. 1999), cert. denied, 531 U.S. 1164 (2001); Cantu-Tzin v. Johnson, 162 F.3d 295, 299 (5th Cir. 1998); Davis v. Johnson, 158 F.3d 806, 810 (5th Cir. 1998), cert. denied, 526 U.S. 1074 (1999). Equitable tolling is warranted only in situations where the petitioner was actively misled or is prevented in some extraordinary way from asserting his rights. Pace, 544 U.S. at 418-19; Cousin v. Lensing, 310 F.3d 843, 848 (5th Cir. 2002).

Ruffin does not assert any reason, and I can find none, that might constitute rare or exceptional circumstances why the one-year statute of limitations period should be considered equitably tolled. In his reply to the State's limitations defense, Ruffin alleges

that the issues addressed in <u>Cordero</u> acted as a state imposed impediment to prevent his timely filing in federal court.  The record is devoid of any support for this contention.  The incidents addressed by the Louisiana Supreme Court in <u>Cordero</u> concerned state procedural matters that did not prevent Ruffin from timely pursuing his federal rights after he exhausted the issues now raised in this federal petition.

To avail himself timely of federal habeas review, Ruffin needed only to provide the state courts an <u>opportunity</u> to address, and if necessary, correct alleged deprivations of federal constitutional rights.  28 U.S.C. § 2254(b)(1)(A); <u>Duckworth v. Serrano</u>, 454 U.S. 1, 3 (1981); <u>Satterwhite v. Lynaugh</u>, 886 F.2d 90, 92 (5th Cir. 1989); <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 845 (1999) ("Comity thus dictates that when a prisoner alleges that his continued confinement for a state court conviction violates federal law, the state courts should have the first opportunity to review this claim and provide any necessary relief.").  No matter the depth of the review provided by the Louisiana appellate court on post-conviction review, the record shows that Ruffin gave each of the state courts <u>several opportunities</u> to consider his post-conviction claims in sufficient time to bring his claims to a federal court.

Instead, Ruffin repeatedly and duplicatively pursued relief in the state courts, and now apparently seeks to use the state courts' process in <u>Cordero</u> to somehow revive his right to seek timely review in this federal court.  It has long been held that "'equity is not intended for those who sleep on their rights.'" <u>Coleman</u>, 184 F.3d at 403 (quoting <u>Fisher</u>,

20

174 F.3d at 713 n.11).  The procedural history of Ruffin's case demonstrates that he had ample opportunity to seek federal review, even before the <u>Cordero</u> issues arose. I cannot find that <u>Cordero</u> impacted Ruffin's ability to pursue federal review in a timely manner to warrant equitable tolling.[62]s

My review of the record reveals no circumstances that might fit the restrictive boundaries of "exceptional circumstances" described in binding precedent.  <u>See</u> <u>Holland v. Florida</u>, 130 S. Ct. 2549, 2574-75 (2010) (equitable tolling was warranted where attorney was more than negligent when he failed to satisfy professional standards of care by ignoring the client's requests timely to file a federal petition and in failing to communicate with the client over a period of years in spite of the client's letters); <u>Hardy v. Quarterman</u>, 577 F.3d 596, 599-600 (5th Cir. 2009) (equitable tolling was warranted where petitioner suffered a significant state-created delay when, for nearly one year, the state appeals court failed in its duty under Texas law to inform him that his state habeas petition had been denied, petitioner diligently pursued federal habeas relief, and he persistently inquired to the court.); <u>United States v. Wynn</u>, 292 F.3d 226 (5th Cir. 2002)

---

[62]I also note that this court's records reveal that many Louisiana petitioners listed under <u>Cordero</u> obtained federal habeas review in this court <u>before</u> their cases were later revisited in the state courts pursuant to <u>Cordero</u>. <u>See</u>, <u>e.g.</u>, L. Pineyro (Civil Action 02-0626"H"); A. Holmes (Civil Action 02-1509"K"); Z. Neal (Civil Action 06-8714"A"); J. Sprinkle (Civil Action 05-0298"B"); J. Level Jr. (Civil Action 02-0967"B"); D. Estes (Civil Action 06-10867"J"); J. Luna (Civil Action 03-3237"M"); P. Funchess (Civil Action 08-5136 "A"); T. Johnson (Civil Action 05-3668"A"); J. Odoms (Civil Action 06-3059"E"); D. Muse (Civil Action 03-2551"H"); A. Diggs (Civil Action 01-1243"L");  D. Hensley (Civil Action 07-1423"B");  G. Leeming (Civil Action 98-3053"T"); C. Gilkers (Civil Action 05-0841"K").

(tolling warranted when defendant was deceived by attorney into believing that a timely motion to vacate was filed); Coleman v. Johnson, 184 F.3d 398, 402 (5th Cir. 1999), cert. denied, 529 U.S. 1057 (2000) ("A garden variety claim of excusable neglect does not support equitable tolling."); Fisher, 174 F.3d at 715 (tolling not justified during petitioner's 17-day stay in psychiatric ward, during which he was confined, medicated, separated from his glasses and thus rendered legally blind, and denied meaningful access to the courts); Cantu-Tzin, 162 F.3d at 300 (State's alleged failure to appoint competent habeas counsel did not justify tolling); Davis, 158 F.3d at 808 n.2 (assuming without deciding that equitable tolling was warranted when federal district court three times extended petitioner's deadline to file habeas corpus petition beyond expiration of AEDPA grace period).

In addition to equitable tolling, the AEDPA itself provides for interruption of the one-year limitations period, in stating that "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." 28 U.S.C. § 2244(d)(2) (emphasis added). By its plain language, this provision does not create a new, full, one-year term within which a federal habeas petition may be filed at the conclusion of state court post-conviction proceedings. Flanagan, 154 F.3d at 199 n.1.  The Supreme Court has clearly described this provision as a tolling statute.  Duncan, 533 U.S. at 175-178.

The decisions of the Fifth Circuit and other federal courts have held that because this statute is a tolling provision, the time during which state court post-conviction proceedings are pending must merely be subtracted from the one-year limitations period:

> [Section] 2244(d)(2) provides that the period during which a properly filed state habeas application is pending must be excluded when calculating the one[-]year period.  Under the plain language of the statute, any time that passed between the time that [petitioner's] conviction became final and the time that his state application for habeas corpus was properly filed must be counted against the one[-]year period of limitation.

Flanagan, 154 F.3d at 199 n.1; accord Brisbane v. Beshears, 161 F.3d 1, 1998 WL 609926 at *1 (4th Cir. Aug. 27, 1998) (Table, Text in Westlaw); Gray v. Waters, 26 F. Supp.2d 771, 771-72 (D. Md. 1998).

For a post-conviction application to be considered "properly filed" within the meaning of Section 2244(d)(2), the applicant must "'conform with a state's applicable procedural filing requirements,'" such as timeliness and location of filing.  Pace, 544 U.S. at 414 ("When a postconviction application is untimely under state law, 'that [is] the end of the matter' for purposes of § 2244(d)(2)"); Williams v. Cain, 217 F.3d 303, 306-307 n.4 (5th Cir. 2000) (quoting Villegas v. Johnson, 184 F.3d 467, 469 (5th Cir. 1999)); Smith v. Ward, 209 F.3d 383, 384-85 (5th Cir. 2000).  The timeliness consideration in Louisiana, for purposes of the AEDPA, requires application of a prison mailbox rule to state pleadings.  Causey v. Cain, 450 F.3d 601, 604-05 (5th Cir. 2006).

A matter is "pending" for Section 2244(d)(2) purposes "as long as the ordinary state collateral review process is 'in continuance.'"  Carey v. Saffold, 536 U.S. 214, 219-

23

20 (2002); Williams, 217 F.3d at 310 (a matter is "pending" for Section 2244(d)(2) purposes until "'further appellate review [is] unavailable under [Louisiana's] procedures.'")

The phrase "other collateral review" in the statute refers to state court proceedings challenging the pertinent judgment subsequently challenged in the federal habeas petition. Dillworth v. Johnson, 215 F.3d 497, 501 (5th Cir. 2000) (state habeas petition challenging a prior conviction in one county was other collateral review even though filed as a challenge to a second conviction in a different county); Nara v. Frank, No. 99-3364, 2001 WL 995164, at *5 (3rd Cir. Aug. 30, 2001) (motion to withdraw a guilty plea is "other collateral review"). A "pertinent judgment or claim" requires that the state filings for which tolling is sought must have challenged the same conviction being challenged in the federal habeas corpus petition and must have addressed the same substantive claims now being raised in the federal habeas corpus petition. Godfrey v. Dretke, 396 F.3d 681, 686-88 (5th Cir. 2005). Requests for document and transcript copies also are not other collateral review for purposes of the tolling calculation. Osborne v. Boone, 176 F.3d 489, 1999 WL 203523 (10th Cir. Apr. 12, 1999) (Table, Text in Westlaw) (motion for transcript copies is not "other collateral review" for tolling purposes); Brown v. Cain, 112 F. Supp.2d 585, 587 (E.D. La. 2000), aff'd, 239 F.3d 365 (5th Cir. 2000); Gerrets v. Futrell, No. 01-3080, 2002 WL 63541 (E.D. La. Jan. 16, 2002) (Vance, J.); Jones v. Johnson, No. 01-CV-0115-G, 2001 WL 1006062, at *3 (N.D. Tex.

Aug. 13, 2001) (petitioner should file application and then continue to gather transcripts); Grayson v. Grayson, 185 F. Supp.2d 747, 751-52 (E.D. Mich. Jan. 3, 2002) (delay in receipt of transcript not required to file the application, does not warrant equitable tolling).

The one-year AEDPA statute of limitations period began to run in Ruffin's case on March 11, 2005, the day after his conviction was final under the AEDPA, and ran for 137 days, until July 25, 2005, when he submitted his next motion to correct his sentence to the state trial court.  The limitations period was tolled by that motion while it was pending, the Hurricane Katrina suspension period, and Ruffin's next motion to vacate submitted to the trial court on November 7, 2005.  Thus, the AEDPA statute of limitations remained tolled until Tuesday, January 3, 2006, which was thirty (30) days after Ruffin's motion to vacate was denied by the state trial court on December 1, 2005, and he did not seek timely review.[63]

The AEDPA filing period began to run again on January 4, 2006 and did so for sixty-two (62) days until March 7, 2006, when Ruffin filed a writ application with the Louisiana Fifth Circuit.  The period remained tolled through the pendency of that writ application and Ruffin's subsequent and overlapping pleadings until March 12, 2007,[64]

---

[63]The calculated period could not end on Sunday, January 1, 2006 or the recognized New Year holiday on Monday, January 2, 2006.

[64]The thirtieth day fell on Saturday, March 10, 2007.

which was thirty (30) days after February 8, 2007, when the state trial court denied Ruffin's motion to reinstate his motion for retroactive application.

Ruffin allowed only twenty-three (23) days of the one-year filing period to run before submitting his next motion to correct his sentence to the state trial court on April 5, 2007.  By this time, 222 days of the one-year AEDPA statute of limitations had lapsed without a federal petition being filed.  Ruffin's subsequent filings continued to toll the AEDPA period from that point until June 22, 2012, when his last writ application was denied by the Louisiana Supreme Court.  The AEDPA period began to run again the next day, on June 23, 2012, and did so for the remaining 143 days, until November 12, 2012, when it expired.

Ruffin had no other properly filed applications for state post-conviction relief or other collateral review pending during the running of that period of time.  He did not submit his federal petition for filing with this court until February 20, 2013, which was 99 days after the AEDPA statute of limitations expired on November 12, 2012.  His federal petition was not timely filed and must be dismissed for that reason.

## **RECOMMENDATION**

For the foregoing reasons, it is **RECOMMENDED** that Ruffin's petition for issuance of a writ of habeas corpus under 28 U.S.C. § 2254 be **DISMISSED WITH PREJUDICE** as time-barred.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28 U.S.C. § 636(b)(1)).[65]

New Orleans, Louisiana, this _____26th_____ day of July, 2013.

_____
JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

---

[65]Douglass referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.